# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHANICQUA BRYANT,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **POTTSGROVE SCHOOL DISTRICT and** | **No. 25-3140** |
| **ANN MARIE LUCAS in her personal and** | |
| **official capacities,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Shanicqua Bryant, proceeding *pro se*, brings this case against Defendants

Pottsgrove School District (the "School District" or "District") and Dr. Ann Marie Lucas in both

her personal and official capacities asserting:[1] (1) constitutional claims pursuant to 42 U.S.C.

§ 1983 for violations of her Establishment Clause, equal protection, and due process rights; (2) a

claim under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); (3) statutory perjury

claims under 18 U.S.C. § 1621 and 18 Pa. C.S.A. § 4902; and, (4) claims for the torts of

defamation, intentional infliction of emotional distress, and false light under Pennsylvania law.[2]

---

[1] Bryant does not specify which claims are brought against the School District, Lucas, or both. However, viewing the allegations in a light most favorable to her, it could be concluded that she is bringing all of them against both Defendants. Moreover, because Bryant sued Lucas in both her personal and official capacities, the official-capacity claims will be treated as claims against Lucas' municipal employer, the School District. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978))); *see e.g.*, *Byars v. Sch. Dist. of Phila.*, 942 F. Supp.2d 552, 569-70 (E.D. Pa. 2013) (assessing First Amendment claims brought against school district employees in their official capacity as claims against the school district itself).

[2] It is unclear whether Bryant seeks to raise these claims on her own behalf or on behalf of her minor child. To the extent Bryant seeks to raise any claims on behalf of her minor child, she is prohibited from doing so. A *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than herself. Accordingly, because Bryant is appearing *pro se* and is not an attorney, she may not bring claims on behalf of her minor child. *See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991). Bryant, who has filed many suits concerning the education of her son, has been told repeatedly that she cannot sue on her son's behalf. *See, e.g.*,

Defendants have filed a Motion to Dismiss premised on Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6).[3]  For the following reasons, the Court will grant in part and deny in part their motion.

## I.    FACTUAL BACKGROUND

The following allegations are taken from Bryant's Amended Complaint, well-pleaded allegations from which are taken as true at this stage.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Amended Complaint is about as bare bones as it can be, setting out a number of incidents without any great detail:

- Bryant has a disabled son whom she enrolled in the District for the 2023-24 school year.
- On or about September 20, 2024, Lucas directed one of her subordinates to file a false police report with the Lower Pottsgrove Police against Bryant.  The District denied responsibility for making the statements in the report and accused the police of false

---

*Bryant v. Pottstown Sch. Dist.*, 2025 WL 602160, at *1 n.1 (3d Cir. Feb. 25, 2025); *Bryant v. Pottstown Sch. Dist.*, 2022 WL 3722084, at *2 n.4 (E.D. Pa. Aug. 29, 2022); *Bryant v. Pottstown Sch. Dist.*, 2021 WL 4893368, at *3 n.3 (E.D. Pa. Oct. 20, 2021); *Aponte v. Pottstown Sch. Dist.*, 2019 WL 3080938, at *1 (E.D. Pa. July 12, 2019).

[3] Defendants filed their Motion to Dismiss on July 17, 2025.  Bryant filed her response just two days later.  To respond so quickly would be a remarkable feat if done by a lawyer.  When done by a *pro se* litigant, it strains credulity.

The proliferation of artificial intelligence tools, such as OpenAI's ChatGPT product, will undoubtedly change the legal profession.  The technology is poised to facilitate legal research, drafting, and compliance with the law.  But a machine is no substitute for a lawyer, or even for a frequent *pro se* litigant such as Bryant.  ChatGPT has a well-documented tendency of generating fake cases in response to law-related prompts.  *See, e.g.*, *Bunce v. Visual Tech. Innovations, Inc.*, 2025 WL 662398, at *1, 4 (E.D. Pa. Feb. 27, 2025) (sanctioning a lawyer who relied on ChatGPT because two separate motions contained "hallucinat[ed]" and misrepresented cases).  Moreover, even when ChatGPT generates real cases, those cases may be inapplicable because the technology does not, for example, automatically grasp common law principles, our system of authorities, or the nuances that divide distinguishable from on-point cases.

Dangers lurk, and *pro se* litigants without legal training are especially vulnerable to being misled.  Yet, like attorneys, they still must comply with court rules and orders.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) ("At the end of the day, [*pro se* litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."); *accord Ross-Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008) (concluding a *pro se* plaintiff was personally responsible for their failure to attend a pretrial conference or otherwise comply with a court order); *Campbell v. LVNV Funding, LLC*, 2022 WL 6172286, at *3 (E.D. Pa. Oct. 7, 2022) ("[*P*]*ro se* litigants must generally comply with local rules." (citations omitted)).  That compliance includes ensuring that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

reporting.  Bryant, however, received assurance from the police department that the accusations were documented as reported by the District.

- In November 2024, there was a "due process" hearing regarding Bryant's son's education and the police report.[4]  Bryant alleges that Lucas and other individuals from the District perjured themselves at that hearing by lying "under oath."  Bryant seems to allege that their conduct was part of a broader conspiracy by Lucas and district staff to target her and her son through lies and other unarticulated conduct.

- Bryant further alleges that the District allowed a teacher to proselytize Islam to her son.  While the District does not offer classes on Islamic studies, the teacher bought her son Islamic clothing and items.  Bryant says her son "brought those ideas and beliefs to my home," which led to distress and arguments with her son about religion.

## II.    DISCUSSION

### A.    12(b)(1)

The gist of Defendants' Rule 12(b)(1) argument is that Bryant does not have standing to pursue her Establishment Clause claim.[5]

---

[4] The Amended Complaint states the hearing was in November 2025, but because that date has yet to occur, the Court assumes Bryant meant November 2024.  Moreover, given the paucity of the Amended Complaint's allegations, the Court can only make an educated guess that the "due process" hearing Bryant refers to is that provided for by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").  *See* 20 U.S.C. § 1415(f).

[5] Defendants also move to dismiss Bryant's § 504 and perjury claims under Rule 12(b)(1).  They contend that Bryant lacks standing to pursue her § 504 claim because she fails to allege the elements for such a claim.  Similarly, they argue she lacks standing to pursue a perjury claim because there is no private cause of action for such a claim.  Although nominally attacks to jurisdiction, these arguments fundamentally challenge the sufficiency of Bryant's allegations; they are more appropriately raised under Rule 12(b)(6).

The choice of which rule to apply is significant because of the "myriad procedural differences" between 12(b)(1) and 12(b)(6), such as when a motion can be raised and who bears the burden of persuasion.  *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022).  More importantly, the question raised by a 12(b)(1) motion—whether a federal court has subject matter jurisdiction over a claim—is "antecedent to [a court's] power to reach the merits of that claim" under a 12(b)(6) motion.  *Finkelman v. NFL*, 810 F.3d 187, 193 (3d Cir. 2016).  Accordingly, because Defendants' § 504 and perjury arguments are not challenges to the Court's "very power to hear the case," *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), they are improperly raised under Rule 12(b)(1).  *See Davis v. Wells Fargo*, 824 F.3d 333, 346-50 (3d Cir. 2016) (holding that the district court "erroneously accepted" the argument that a plaintiff lacked standing because he had sued the wrong corporate entity, framing the issue of whom the plaintiff could hold responsible as a "merits question" to be addressed under 12(b)(6)); *cf. Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346 (3d Cir. 2001) ("Whether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms.").  Nevertheless, because Defendants repeat their contentions under 12(b)(6), they will be evaluated under that framework.

By contrast, Defendants properly move under 12(b)(1) to dismiss Bryant's Establishment Clause claim.  Their

### i.    *Legal Standard*

Rule 12(b)(1) allows a defendant to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Want of Article III standing is properly brought pursuant to Rule 12(b)(1) because Article III provides "jurisdictional limitation[s]" that implicate "the Court's power to hear" claims. *Potter*, 46 F.4th at 154-57; *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Here, Defendants launch a facial attack on Bryant's standing to pursue her Establishment Clause claim in that they "contest[] the sufficiency of the pleadings." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017). Such an attack focuses on the face of the complaint, asserting that "it is insufficient to invoke the subject matter jurisdiction of the court" because there is a "jurisdictional defect." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Here, Defendants argue that Bryant's Establishment Clause claim is jurisdictionally defective because her alleged injuries do not give her a "concrete stake" in the litigation. *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021) (explaining that "federal courts do not adjudicate hypothetical or abstract disputes," only suits where the plaintiff demonstrates "their personal stake" in the resolution of an issue).

In evaluating a facial attack, "the same standard of review" as a motion to dismiss for failure to state a claim is applied. *Finkelman*, 810 F.3d at 194. In other words, the "well-pleaded factual allegations" in the complaint are presumed to be true, "conclusory statements" are

---

argument, that Bryant fails to allege an Article III injury, concerns the heart of subject matter jurisdiction—"the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

ignored, and then a determination is made as to whether the allegations "plausibly" establish standing. *Id.* (citing *In re Schering*, 678 F.3d at 243).

In the 12(b)(1) context, the burden of establishing the elements of standing is on the plaintiff, and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (citation omitted).

### ii.    Establishment Clause

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Under Article III of the Constitution, federal courts may only resolve "cases" and "controversies." *TransUnion*, 594 U.S. at 423.  "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *Id.* (internal quotation marks and citation omitted).  To establish standing, "a plaintiff must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citation omitted). "[S]tanding is not dispensed in gross," but rather "a plaintiff must demonstrate standing for each claim [s]he seeks . . . ." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (citations omitted).

Defendants argue that, with respect to her Establishment Clause claim, Bryant fails to meet the first element of standing, the injury-in-fact requirement.  Citing *Freedom from Religion Foundation Inc. v. New Kensington Arnold School District*, they contend that standing "in this

context" turns on whether a plaintiff alleges "direct and unwelcome personal contact with the alleged establishment of religion."  832 F.3d at 476-77 (citations omitted).  Noting that Bryant alleges only that she received secondhand information from her son about his engagement with his teacher about Islam, Defendants argue she has not established the essential component of "direct" contact with the establishment of religion.

Their argument might have merit if *Freedom from Religion Foundation* supplied the controlling standard, but it does not.  The Third Circuit made clear that *Freedom from Religion Foundation*'s test applies in a different "context"—to challenges of religious displays under the Establishment Clause.  *Id.* at 476 ("We first address what a plaintiff must show to have standing to challenge a religious display under the Establishment Clause and then examine whether standing exists . . . .").  By contrast, Bryant's allegations are about allegedly coercive religious instruction given to her son.

Thus, the question really at issue here is whether Bryant suffered a cognizable injury attributable to the religious teaching provided to her son.  *See Fleischfresser v. Dirs. of Sch. Dis. 200*, 15 F.3d 680, 683 (7th Cir. 1994) (observing that where "parents, not the students by their parents," have brought an Establishment Clause challenge to allegedly unconstitutional religious instruction, a court "must be sure that the parents are raising rights personal to them and not the rights of their children").

The Supreme Court has long recognized that parents have an interest in their children's religious education and therefore have standing in their own right to challenge actions of their children's school that interfere with that interest.  *See, e.g.*, *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 224 n.9 (1963); *Zorach v. Clauson*, 343 U.S. 306, 309 n.4 (1952); *Illinois ex rel. McCollum v. Bd. of Educ.*, 333 U.S. 203, 206 (1948); *see also Donovan ex rel.*

*Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 217 n.2 (3d Cir. 2003) ("We do note that parents independently have standing to bring constitutional challenges to the conditions in their children's schools."). In *Schempp*, the Supreme Court considered an Establishment Clause challenge to a state statute requiring school prayer. *Schempp*, 374 U.S. at 205. The Schempp family—husband, wife, and two of their children—brought suit to enjoin the statute's enforcement. *Id.* Quite obviously, the Schempp parents were not themselves subjected to the school prayer requirement. *See id.* at 206-08. While this might have suggested that they lacked standing to sue in their own right, the Supreme Court wrote:

> It goes without saying that the laws and practices involved here can be challenged only by persons having standing to complain. . . . The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain.

*Id.* at 224 n.9 (citation omitted). As later clarified in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, the *Schempp* plaintiffs had standing "because impressionable schoolchildren were subjected to unwelcome religious exercises or were forced to assume special burdens to avoid them." 454 U.S. 464, 486 n.22 (1982).

In light of *Schempp*, courts have held that where parents are "directly affected" by religious practices at their children's school, the parents independently "have standing to raise their claim alleging a violation of the Establishment Clause because the impermissible establishment of religion might inhibit their right to direct the religious training of their children." *Fleischfresser*, 15 F.3d at 684; *accord Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1532 (9th Cir. 1985), *cert. denied*, 474 U.S. 826 (1985); *Dobrich v. Walls*, 380 F. Supp.2d 366, 372-73 (D. Del. 2005).

Turning to this case, Bryant alleges that the unconsented religious instruction caused disputes about religion between her and her son. She now seeks damages for this alleged

interference with her religious training of her son, whom she notes is particularly vulnerable because of his disability.  Accepting these allegations as true, they are sufficient for standing. *See, e.g.*, *Dobrich*, 380 F. Supp.2d at 370-73 (concluding that parents had standing to seek damages after a dispute about school-sponsored prayer and religious "privileges" triggered public harassment and forced some family members to relocate); *Separation of Hinduism from our Schs. v. Chi. Pub. Schs.*, 2021 WL 2036536, at *7 (N.D. Ill. May 21, 2021) (determining that parent had standing where he alleged he was "angered by the intrusion into his child's religious education and coercion toward a belief system that he believed was inconsistent with Christianity" (internal quotation marks omitted)); *Doe v. Heritage Acad., Inc.*, 2017 WL 6001481, at *5-6 (D. Az. June 9, 2017) (concluding that a father had standing to challenge "unwanted religious instruction" at his son's public charter school because he alleged it undermined "his responsibility . . . to provide for his child or children's religious education"). Accordingly, Defendants' motion will be denied to the extent it is premised on lack of standing.

### B.    12(b)(6)

Turning to Defendants' Rule 12(b)(6) contentions, they argue that the Amended Complaint, with its dearth of facts, fails to state any claim.  In addition, Lucas argues she is entitled to qualified immunity with respect to any claims brought against her in her personal capacity.  Because the qualified immunity analysis turns in part on whether she adequately states her claims, the sufficiency of Bryant's allegations will be considered first.

### i.    *Legal Standard*

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, a complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11 (citation omitted).

Because Bryant is proceeding *pro se*, her allegations must be construed liberally at this stage. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala*, 704 F.3d at 244-45). The "relevant legal principle" therefore will be applied "even when the complaint has failed to name it." *Id.* "[E]ven if it is vague, repetitious, or contains extraneous information, a pro se complaint's language will ordinarily be 'plain'" in satisfaction of Rule 8 "if it presents cognizable legal claims to which a defendant can respond on the merits." *Garrett v. Wexford Health*, 938 F.3d 69, 94 (3d Cir. 2019) (citations omitted).

### ii.    *Constitutional Claims Pursuant to § 1983*

Bryant's claims alleging violations of the Establishment Clause and her Fourteenth Amendment rights are governed by § 1983, the statutory vehicle by which federal constitutional claims may be heard in federal court. Section 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).

a.   <u>Establishment Clause</u>

Bryant's Establishment Clause claim is premised on her contention that the School

District violated her Establishment Clause rights by allowing a teacher to proselytize to her son.

The Establishment Clause, applied to the States and their political subdivisions through

the Fourteenth Amendment, provides that "Congress shall make no law respecting an

establishment of religion."  U.S. Const. amend. I; *Wallace v. Jaffree*, 472 U.S. 38, 49-50 (1985).

To prevail on an Establishment Clause claim, a plaintiff must show that the challenged

government action "resemble[s] a traditional hallmark of religious establishment."  *See*

*Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*, 136 F.4th 484, 486 (3d Cir. 2025), *petition for*

*cert. filed*, No. 25-256 (Sept. 4, 2025).  The Third Circuit has identified six such hallmarks:

> First, the government exerted control over the doctrine and personnel of the established church.  Second, the government mandated attendance in the established church and punished people for failing to participate.  Third, the government punished dissenting churches and individuals for their religious exercise.  Fourth, the government restricted political participation by dissenters.  Fifth, the government provided financial support for the established church, often in a way that preferred the established denomination over other churches.  And sixth, the government used the established church to carry out certain civil functions, often by giving the established church a monopoly over a specific function.

*Id.* at 491 (citing *Shurtleff v. City of Boston*, 596 U.S. 243, 286 (2022) (Gorsuch, J., concurring in

the judgment)).  Courts are to draw comparisons between these hallmarks and the challenged

government conduct.  *Id.*[6]

---

[6] Judge Phipps notes that there are two outstanding questions regarding *Hilsenrath*'s hallmarks test: "(i) whether

The second *Hilsenrath* hallmark—"the government mandat[ing] attendance in the established church and punish[ing] people for failing to participate"—reflects that the Establishment Clause prohibits the government, including public schools, from coercing individuals into religious practice. *Id.* at 491-92. Indeed, "coercion was one of the one of the 'foremost hallmarks of religious establishments' at the founding . . . ." *Id.* at 492 (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022)). The "government may not, consistent with a historically sensitive understanding of the Establishment Clause, 'make a religious observance compulsory.'" *Kennedy*, 597 U.S. at 537 (quoting *Zorach*, 343 U.S. at 314). "[N]or may it force citizens to engage in 'a formal religious exercise.'" *Id.* (quoting *Lee v. Weisman*, 505 U.S. 577, 589 (1992)). So, for instance, a public school violates the Establishment Clause by permitting a student to deliver a prayer over a public address system before each varsity football game because of the prayer's coercive effect on spectators. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 311-12 (2000); *see also Lee*, 505 U.S. at 593 (holding unconstitutional a religious benediction given at a high school graduation ceremony because of "heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools").

In assessing a motion to dismiss an Establishment Clause claim, a court's role is to identify a standard—adduced from factually similar Establishment Clause cases—and ask whether a complaint's well-pleaded allegations state a facially plausible claim. *See, e.g.*, *Freedom from Religion Found., Inc. v. New Kensington-Arnold Sch. Dist.*, 919 F. Supp.2d 648,

---

governmental action that offends only one of the hallmarks is sufficient for an Establishment Clause violation, or whether the hallmarks should be considered in the aggregate; and (ii) if one or more of the hallmarks of an established church are present, whether that is dispositive of an Establishment Clause violation, or whether the government can justify its offending practice as comporting with history and tradition." *Id.* at 494-95 (Phipps, J., concurring in the judgment). These questions need not be addressed here because, as discussed below, Bryant's allegations do not plausibly state a claim under any of the *Hilsenrath* hallmarks.

652-61 (W.D. Pa. 2013); *Tearpock-Martini v. Borough*, 98 F. Supp.3d 697, 700-02 (M.D. Pa. 2015); *Fields v. Speaker of the Pa. House of Representatives*, 251 F. Supp.3d 772, 789-91 (M.D. Pa. 2017).

Here, Bryant alleges that her son's public school coerced him into Islam.  In *Hilsenrath*, a case also involving allegations of Islamic proselytization at a public school, the Third Circuit considered a parent's Establishment Clause challenge to curriculum in her son's mandatory "Word Cultures and Geography" class.  *Hilsenrath*, 136 F.4th at 486-87.  The curriculum assigned videos that, in addition to covering the five pillars of Islam, contained messages describing Allah as "the one God" and Islam as "the true faith."  *Id.* at 487-88.  The parent alleged that the school board "did something like mandat[ing] attendance in the established church" by requiring her to son to watch these videos.  *Id.* at 491 (alteration in original) (internal quotation marks omitted).

Addressing her argument, the court distinguished "permissible curricular materials from impermissible proselytization."  *Id.* at 493.  On the unconstitutional side of the line are instances where a public school opens its doors to clergy-led religious instruction during school hours, *see McCollum*, 333 U.S. at 206-09, or organizes an orthodox devotional practice, such as student readings from the Bible and recitations of the Lord's Prayer at the start of the school day, *see Schempp*, 374 U.S. at 207, 223.  On the constitutional side of the line are instances where students encounter religious material for legitimate "academic" purposes.  *Hilsenrath*, 136 F.4th at 492.  The videos in *Hilsenrath* fell on this side of the line.  They were instructional, not coercive, because the school board had assigned them to help students "explore the 5 Pillars of Faith and be able to explain the impact/significance of them in the Muslim culture," as well as to learn the benefits and consequences of generalizations.  *Id.* at 493.  Moreover, the unit on Islam

was part of the class's larger exploration of world history and culture, which included introductions to several other faiths, including Christianity, Judaism, Buddhism, and Hinduism. *Id.* The court therefore authorized public school curriculum incorporating ostensibly religious doctrine into "an appropriate study of history, civilization, and comparative religion." *Id.* at 493 (internal quotation marks and citation omitted). The court affirmed that "[w]hile there may be circumstances in which public schools violate the Establishment Clause by subjecting students to proselytizing materials," it also "cautioned against '[f]ocus[ing] exclusively on the religious component of any activity.'" *Id.* at 492 (second and third alterations in original) (citing *Lynch v. Donnelly*, 465 U.S. 668, 680 (1984)).

The facts that Bryant provides in support of her Establishment Clause claim are spare, *i.e.,* one of her son's teachers gave him Islamic teaching and religious items, and the District does not offer an Islamic studies class. Nothing is known beyond that. Indeed, there is not even an allegation that the complained-of interaction occurred at school. Apart from the conclusory accusation that the teachings were "forced" on her son, Bryant provides no plausible facts from which it could be concluded that the District sanctioned the proselytization of her son. Accordingly, her Establishment Clause claim against the District will be dismissed without prejudice.

b.  <u>Equal Protection Clause</u>

Bryant's second constitutional claim, also brought pursuant to § 1983, arises under the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause commands: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A plaintiff can state an equal protection claim under either a protected classification or "class of one" theory. *See*

*Echevarria v. Cnty. of Bergen*, 2025 WL 517955, at *9 (D.N.J. Feb. 18, 2025) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000)).  Under a protected classification theory, a plaintiff must allege "[s]he was treated differently than other similarly situated [individuals], and that this different treatment was the result of intentional discrimination based on [her] membership in a protected class."  *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of N.Y.*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).  To state a claim under a "class of one" theory, "a plaintiff must allege that (1) the defendant treated [her] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Common to both theories is the requirement that an individual be treated differently relative to "similarly situated individuals."  At the pleadings stage, this is not a demanding requirement.  A plaintiff need not "name names" or identify "specific instances where others have been treated differently."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 244-45 (3d Cir. 2008) (citing *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003)).  Rather, "[she] must allege facts sufficient to make plausible the existence of . . . similarly situated parties," *Perano v. Twp. of Tilden*, 423 Fed. App'x 234, 238 (3d Cir. 2011), who are "alike 'in all relevant aspects'" to her, *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  "[T]he failure to identify similarly situated persons dooms an equal-protection claim."  *Stradford v. Sec'y Pa. Dep't of Corrs.*, 53 F.4th 67, 74 (3d Cir. 2022) (citing *Hill*, 455 F.3d at 239).

Bryant has failed to meet this low burden.  She alleges that Lucas "targeted" her and, more broadly, engaged in a conspiracy with other staff members to defame her and suppress her

ability to be an active parent within the District. But "[s]he does not allege the existence of similarly situated individuals," and she does not allege they were treated differently than her. *Hill*, 455 F.3d at 239 (citation omitted). For this reason alone, her claim must fail. *See id.* (granting a motion to dismiss because the complaint did not allege that a mayor treated other borough employees differently); *Akil v. City of Phila.*, 2023 WL 8548743, at *5 (E.D. Pa. Dec. 11, 2023) (dismissing an equal protection claim where the complaint did not identify any comparators).

Defendants also argue that her claim under a protected classification theory requires dismissal for an additional reason. Alleging "intentional discrimination" under that theory requires facts indicating a "state actor *meant* to single out a plaintiff because of the *protected characteristic* itself." *Hassan*, 804 F.3d at 297 (emphasis in original) (citations omitted). Bryant, however, does not allege a protected characteristic. A liberal reading of the Amended Complaint suggests she believes that being the parent of a disabled child qualifies as a protected characteristic. But the Equal Protection Clause does not provide heightened protections to individuals with disabilities, let alone to parents of such individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442-47 (1985) (holding that persons with disabilities are not a suspect classification for the purposes of an equal protection challenge). The closest Bryant gets to alleging a protected characteristic is her statement that she suffers "from anxiety of known police brutality against people of color." She, however, does not identify her race in the Amended Complaint. Nor does she allege that any discrimination she faced from the District was because of her race.[7] Accordingly, her equal protection claim against the District will be

---

[7] In her response in opposition, Bryant states the District "targeted Bryant due to her race." Her contention, however, cannot be considered because "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" in deciding a motion to dismiss. *Pension Benefit*

dismissed without prejudice.

c.  Due Process Clause

Bryant's due process claim pursuant to § 1983 will, however, not be dismissed.  The Due Process Clause of the Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.

As an initial matter, Defendants fault Bryant for not expressly invoking the Due Process Clause in her complaint.  She complains only of her "civil rights under the Fourteenth Amendment."  While Rule 8 does require "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2),  it "do[es] not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (citations omitted), particularly when the plaintiff is representing herself.  Indeed, in *Johnson*, where the lower court had dismissed a Fourteenth Amendment due process claim against a municipality because the complaint failed to mention it was brought pursuant to § 1983, the Supreme Court reversed.  *Id.* at 11.  Likewise, it would be inappropriate to grant dismissal here just because Bryant, proceeding *pro se*, did not invoke the magic words of "due process."

Turning now to the allegations that underpin her due process claim, Bryant says that the District, by way of one of Lucas' subordinates, filed a false police report against her.  Separately, she says that Lucas and other district employees perjured themselves at an IDEA "due process" hearing.

Defendants do not meaningfully engage with these allegations.  Instead, they make conclusory assertions that these "violations" are "speculative" and that Bryant "does not allege a

---

*Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

deprivation of procedural rights, which would require an allegation that (1) she was deprived of an individual interest 'encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) the procedures available to [her] did not provide due process of law.'" Defs.' Br. 8 (quoting *Battle v. Marchese*, 2025 WL 1710538, at * 18 (M.D. Pa. May 27, 2025)). Merely repeating keywords from *Twombly* and stating the due process standard, coupled with a bare assertion that it is unmet, does not satisfy Defendants' burden of showing the Amended Complaint fails to state a claim. [8] *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ("The defendant bears the burden of showing that no claim has been presented." (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991))); *see, e.g., Doe v. Wozniak*, 2009 WL 10715510, at *9 (M.D. Pa. Mar. 3, 2009) (concluding defendants failed to meet their burden when their argument was simply: "Plaintiff has failed to make any allegations of a conspiracy or agreement to act to deprive her of her civil rights. Therefore, Plaintiff's claim for conspiracy pursuant to § 1983 must be dismissed."). Accordingly, Defendants' Motion to Dismiss Bryant's due process claim against the District will be denied.

### iii.    *Perjury Claims*

Turning now to Bryant's perjury claims stemming from her allegations that Lucas and other district employees lied "under oath" at her son's IDEA hearing: she does not specify whether they arise under federal or state law, so they will be analyzed under both the federal criminal perjury statute, 18 U.S.C. § 1621(1), and Pennsylvania criminal perjury statute, 18 Pa. C.S.A. § 4902(a).

---

[8] In a similar vein, Defendants state, without argument, that Bryant's due process and equal protection claims should be dismissed because Bryant "has failed to allege a state-created danger theory or a theory of municipality liability supported by *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) and its progeny." Absent advocacy to support a position, the Court has not been provided with the tools to make a decision on this point and, thus, Bryant's due process and equal protection claims will not be dismissed on this argument.

Defendants argue that these statutes do not provide a civil cause of action.  Indeed, "[c]riminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are . . . poor candidates for the imputation of private rights of action." *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999) (citations omitted); *see also Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone . . . .").

Accordingly, courts have declined to recognize a private right of action under the federal perjury statute.  *See, e.g.*, *Olexsak v. Jones*, 2022 WL 2980985, at *4 n.9 (D.N.J. July 28, 2022) (holding that § 1621 "do[es] not provide Plaintiff with a private cause of action"); *Shawe v. Fernandes*, 2018 WL 547234, at *2 (E.D. Pa. Jan. 24, 2018) (concluding in a civil case alleging a violation of § 1621 that "[c]riminal statutes . . . do not provide a basis for civil liability" (citations omitted)); *Howard v. Paye*, 188 F. Supp.3d 496, 499 (E.D. Pa. 2016) ("[The plaintiff] cannot state a claim under 18 U.S.C. § 1621 because that federal criminal statute does not give rise to civil liability." (citation omitted)); *Ivey v. Dep't of Treasury*, 285 Fed. App'x 763, 763-64 (D.C. Cir. 2008) (per curiam) ("To the extent appellant attempted to raise additional causes of action, there is no private cause of action for perjury and subornation of perjury." (citations omitted)); *Oates v. City of Phila. Civ. Serv. Comm'n*, 1998 WL 107300, at *1 (E.D. Pa. Feb. 18, 1998) (holding § 1621 does not provide a private cause of action).

Similarly, there is no civil cause of action under Pennsylvania's perjury statute.  *See, e.g.*, *Deyo v. Eck*, 2023 WL 3821818, at *13 (E.D. Pa. June 5, 2023) (dismissing *pro se* complaint thar referenced § 4902, concluding there was no private cause of action); *Page v. Doyle*, 2018 WL 2976374, at *4 (E.D. Pa. June 12, 2018) ("But in Pennsylvania perjury is a criminal offense

with no civil remedy." (citation omitted)); *Simpson v. City of Coatesville*, 2015 WL 7251546, at

*5 (E.D. Pa. Nov. 17, 2015) (concluding § 4902 does not provide a civil remedy); *Sarpolis v.*

*Tereshko*, 26 F. Supp.3d 407, 418 (E.D. Pa. 2014) ("Pennsylvania law, however, does not

recognize a private cause of action for perjury . . . ." (citations omitted)); *Amos v. NMS Labs*,

2013 WL 504181, at *1 (M.D. Pa. Feb. 12, 2013) ("Plaintiff's perjury claim . . . also fails

because there is no private cause of action for perjury under Pennsylvania law." ).

      The lack of a private right of action is dispositive.  Bryant's federal and state perjury

claims against the School District and Lucas will be dismissed with prejudice.

    *iv.     Section 504 of the Rehabilitation Act*

      Bryant also seeks relief under § 504 of the Rehabilitation Act of 1973,[9]  which provides

"[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance . . . ."  29

U.S.C. § 794(a). The Rehabilitation Act guarantees that children with disabilities will not be

denied an education because of their disability, a protection enforced through discrimination

claims. *Andrew M. v. Del. Cnty. of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d

Cir. 2007) (citation omitted).  To safeguard this guarantee, a regulation implementing § 504 also

prohibits retaliation against those who enforce rights under the statute:

     No recipient or other person shall intimidate, threaten, coerce, or discriminate against any
     individual for the purpose of interfering with any right or privilege secured by section
     601 of the Act or this part, or because he has made a complaint, testified, assisted, or

---

[9] Section 504 of the Rehabilitation Act does not contain an express private right of action.  However, because the Rehabilitation Act adopts the scheme of "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.)," 29 U.S.C. § 794a(2), and because the Supreme Court identified an implied right of action under Title VI, "Congress, in essence, [has] provided a private right of action under Section 504 by incorporating Title VI's 'remedies, procedures, and rights' into the statute." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803-04 (3d Cir. 2007) (citation omitted).  Section 504, via Title VI, provides a standalone and "exclusive" cause of action. *Id.* at 805-06.

participated in any manner in an investigation, proceeding or hearing under this part. 34 C.F.R. § 100.7(e).[10]

Bryant's claim is premised on her allegations that the District retaliated against her for enforcing her son's § 504 rights: specifically, that the District retaliated by filing a false police report. Defendants did not address Bryant's retaliation claim in their brief and, accordingly, it will not be dismissed against the District. *See Hedges*, 404 F.3d at 750 ("The defendant bears the burden of showing that no claim has been presented." (citing *Kehr*, 926 F.2d at 1409)).

### v.   *Qualified Immunity*

To the extent she is sued in her personal capacity, Lucas argues that she has qualified immunity as a government official.[11] Qualified immunity "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A two-part framework is used to evaluate whether a defendant is protected by the qualified immunity doctrine: (1) whether the facts as alleged constitute a violation of a constitutional or statutory right, and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *See id.* at 231-32. A government official bears both the burden of pleading the defense, *Thomas v. Indep. Twp.*, 463

---

[10] 34 C.F.R. § 1007(e) is the "anti-retaliation regulation implementing section 504." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 266 n.5 (3d Cir. 2007).

[11] Although Lucas appears to raise the defense to all claims against her, qualified immunity is a defense to federal claims only. *See El v. City of Pittsburgh*, 975 F.3d 327, 334 n.3 (3d Cir. 2020).

F.3d 285, 293 (3d Cir. 2006), and the burden of persuasion, *see Burns v. Pa. Dep't of Corrs.*, 642 F.3d 163, 176 (3d Cir. 2011) ("The burden of establishing qualified immunity falls to the official claiming it as a defense." (citing *Harlow*, 457 U.S. at 819)); *see also Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) ("The burden of establishing entitlement to qualified immunity is on [the defendant]." (citing *Harlow*, 457 U.S. at 808)).

a. <u>Establishment Clause and Equal Protection Clause Claims</u>

With respect to Bryant's § 1983 claims premised on the Establishment and Equal Protection Clauses, Lucas has qualified immunity. Under prong one of the qualified immunity framework, a well-pleaded complaint "necessarily alleges a constitutional violation for purposes of qualified immunity, while a complaint that fails to plausibly plead the violation of a right does not." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025). Accordingly, because the Amended Complaint does not plead a plausible violation of Bryant's Establishment Clause and equal protection rights, Lucas is entitled to qualified immunity on those claims as currently pleaded. *See A.W.*, 486 F.3d at 806; *George v. Rehiel*, 738 F.3d 562, 579 (3d Cir. 2013) (granting qualified immunity after concluding the complaint did not establish a First Amendment retaliation claim).

b. <u>Due Process Clause and § 504 Retaliation Claims</u>

Lucas also argues she has qualified immunity as to Bryant's due process and § 504 retaliation claims. As a threshold issue, the Court notes that Third Circuit has recognized qualified immunity applies to individual-capacity claims under federal statutes, including the Rehabilitation Act of 1973. *See Mack v. Yost*, 63 F.4th 211, 224 (3d Cir. 2023); *see also Lue v. Moore*, 43 F.3d 1203, 1205 (8th Cir. 1994) ("Four other courts of appeals . . . have applied the qualified immunity defense in lawsuits filed under the Rehabilitation Act. We think this result is

sensible.  The broad language of *Harlow v. Fitzgerald* . . . suggests qualified immunity should normally be available in civil damages lawsuits unless Congress has stated otherwise." (citations omitted)).

As explained above, Defendants have not shown that the Amended Complaint fails to state a due process or § 504 retaliation claim.  By that same logic, Lucas has not met her burden of establishing she is entitled to qualified immunity on these claims, at least under prong one of the analysis.

That means the success of Lucas' defense turns on the second prong—whether the rights were "clearly established" at the time of the alleged violations.  Lucas, in essence, argues she is entitled to immunity because "the complaint does not contain any factual allegations that would negate [her] qualified immunity defense."  *Thomas*, 463 F.3d at 291.  Specifically, she argues: "On the face of Plaintiff's complaint, it is not clear which constitutional or statutory right Lucas is alleged to have violated, nor has Plaintiff made sufficient allegations that Lucas understood that her actions violated that right such to remove the shield of qualified immunity."  Lucas' argument is "legally unsound," *id.*, and squarely foreclosed by Third Circuit precedent.

To reiterate, "the 'burden of pleading a qualified immunity defense,' like any other affirmative defense, 'rests with the defendant.'"  *Stringer*, 141 F.4th at 86 (quoting *Thomas*, 463 F.3d at 293).   Lucas' argument flips the qualified immunity burden.  Qualified immunity is not, as Lucas characterizes it, a "shield" that Bryant must "remove" by pleading a violation of clearly law established law.  Nor is "qualified immunity" a "a talismanic phrase that relieves Defendants of their burden to show that their actions did not violate . . . clearly established constitutional [or statutory] rights."  *Jennings v. Borst*, 2019 WL 4447593, at *4 (E.D. Pa. Sept. 16, 2019).  As recently reaffirmed by the Third Circuit, "a plaintiff 'has no pleading burden to anticipate or

overcome a qualified immunity defense.'" *Stringer*, 141 F.4th at 86 (quoting *Thomas*, 463 F.3d at 289).

Quite apart from Lucas' incorrect understanding of the burden in a qualified immunity defense, Lucas' argument for qualified immunity as to Bryant's due process and § 504 claims is "conclusory and undeveloped." *Id.* She neither defines the rights allegedly violated nor demonstrates that they were clearly established. Accordingly, her request for qualified immunity as to these claims will be denied.

If appropriate, Lucas may raise this defense again at summary judgment, when she will still have the burden of establishing immunity. *See Yost*, 63 F.4th at 227 ("'[T]he party asserting the affirmative defense of qualified immunity' bears the burden of persuasion on both prongs at summary judgment." (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014)).

### vi.    State Law Tort Claims

Finally, the School District moves to dismiss Bryant's claims for defamation, intentional infliction of emotional distress, and false light—each of which are brought under Pennsylvania law—on the grounds that they are barred by the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541 *et seq.*[12] The PSTCA declares that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id.* Although there is an exception for negligent acts involving nine enumerated categories,[13] the PSTCA completely bars

---

[12] Defendants moved to dismiss these claims against Lucas in her official capacity only. Thus, these claims remain against her in a personal capacity.

[13] The enumerated exceptions include: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; (8) care, custody, or control of animals; and, (9) sexual abuse. *Id.* § 8542(b).

liability for intentional torts. *See id.* § 8542(b); *see also West ex rel. S.W. v. Pittsburgh Pub. Schs.*, 327 A.3d 340, 346 (Pa. Commw. 2024) ("[The law is settled that . . . liability may be imposed on a local agency only for negligent acts."). A school district is a "local agency" for purposes of the PSTCA. *See West ex rel. S.W.*, 327 A.3d at 346. Accordingly, Bryant's claims against the District for defamation, intentional infliction of emotional distress, and false light shall be dismissed with prejudice.

An appropriate Order follows.

**BY THE COURT:**


**___/s/ Wendy Beetlestone_____**
**WENDY BEETLESTONE, C.J.**